UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| OSCAR LEE MATTHEWS, JR. | CIVIL ACTION NO. 12-1188 |
| VERSUS | JUDGE S. MAURICE HICKS |
| RED RIVER ENTERTAINMENT OF SHREVEPORT, L.L.C. DBA SAM'S TOWN HOTEL AND CASINO SHREVEPORT | MAG. JUDGE KAREN L. HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiff Oscar Lee Matthews, Jr., (Rec. Doc.13) and a Motion for Summary Judgment filed by Defendant Red River Entertainment of Shreveport, LLC d/b/a Sam's Town Hotel and Casino ("Sam's Town")(Rec. Doc. 12).[1]  For the reasons that follow, Plaintiff's Motion for Partial Summary Judgment (Rec. Doc. 13) is hereby **GRANTED** insofar as Sam's Town is liable for the incident at issue and any subsequent related damages.  Accordingly, Sam's Town's Motion for Summary Judgment seeking dismissal of all claims (Rec. Doc. 12) is hereby **DENIED**.

**FACTUAL BACKGROUND**

On March 27, 2011, Oscar Lee Matthews, Jr. ("Matthews"), a citizen of the State of Texas, was a hotel guest and slot patron of Sam's Town Casino.[2]  Rec. Doc. 13-2 at ¶ 1.

---

[1]The Court notes that Plaintiff's motion was styled as a Motion for Partial Summary Judgment while Defendant filed its motion as a Motion for Summary Judgment.  Because Plaintiff seeks a ruling from this Court that Sam's Town is 100% liable and that Plaintiff is entitled to judgment as a matter of law, Plaintiff's motion can be most efficiently addressed as a cross-motion in opposition to Sam's Town's Motion for Summary Judgment.

[2]Red River Entertainment of Shreveport, LLC d/b/a Sam's Town Hotel and Casino Shreveport, is a Louisiana Limited Liability Company, which is wholly owned by Boyd Louisiana Racing, LLC a Louisiana Limited Liability Company. Boyd Louisiana Racing, LLC is owned by a single member, Boyd Gaming Corporation, which is a Nevada Corporation, with its principal place of business in Nevada, and therefore Red River Entertainment of

While Matthews was seated in a chair playing a slot machine at the casino, the back of the chair broke away from the chair base causing Matthews to fall backwards to the floor sustaining injuries. Rec. Doc. 13-2 at ¶ 3; 12-2 at ¶ 1. See also the video of the incident listed as Plaintiff's Exhibit 1. A review of the video of the gaming floor also reveals that Matthews made no sudden movement to precipitate the break; rather, the chair back unexpectedly gave way while Matthews passively sat in it. Id. As a result of this incident, Matthews filed suit in Louisiana state court against Sam's Town under Louisiana Civil Code article 2317 and 2317.1. Rec. Doc. 1-1 at ¶ 6. The matter was removed to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. Both parties subsequently filed motions for summary judgment and/or partial summary judgment.

Given the nature of this incident and the necessity to determine the reasonable standard of care applicable to Sam's Town under these circumstances, the factual details surrounding the design and specific parts of the broken chair are of critical importance. The chair back on the particular slot chair involved in this incident was attached to the seat base with a curved metal plate or "back bar" that was supposed to be affixed to the underside of the seat with three bolts that inserted through holes in the back bar and screwed into three threaded bolt holes or "T-nuts" on the underside of the seat. Rec. Doc. 12-2 at ¶ 10 and 11. These bolt holes and the back bar were covered by a flap of upholstery. Id. According to the testimony of Tim Wiley, a Sam's Town employee who performed repairs on the gaming vessel, this chair was re-upholstered by a third party sometime prior to April, 2008. Rec. Doc. 12-2 at ¶ 16.

---

Shreveport, LLC's citizenship for purposes of diversity jurisdiction is Nevada. See Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1080 (5th Cir. 2008).

Following the incident in which Matthews was injured, Katherine Hendricks, a Sam's Town security officer and EMT, inspected the site and found a single piece of a severed bolt about 3 feet away from the broken chair. Rec. Doc. 12-2 at ¶ 10 and 11. She did not find any other bolts or chair hardware. Rec. Doc. 12.-1 at 3. Tim Wiley subsequently took the broken chair into custody and found a broken off bolt stub in the chair cushion. In total, the pieces of one complete bolt were found. Rec. Doc. 12-2 at ¶ 16-20. Casino employees did not find any physical evidence of the second and third bolts which should have been present had the chair back been properly attached to the base. Sam's Town admits that one of the three bolts that attached the back bar to the seat sheared and the other two bolts had either backed out of the T-nuts or never were installed. Rec. Doc. 12-1 at 7. Sam's Town offers no explanation for the total absence of any evidence of the second and third bolts at the scene of the incident, thus, this Court concludes that the second and third bolts were missing from the subject chair at that time. Additionally, Plaintiff was not able to have an expert inspect the sole remaining bolt attaching the chair back to its base for any wear patterns or fractures that may have indicated the length of time the chair contained the defect prior to the incident. As conceded by Sam's Town, the absence of the two bolts constitutes a defect. Rec. Doc. 12-1 at 7.

The particular chair at issue was not a simple stationary object with four legs, a seat, and a back all welded to each other in a permanent fashion. Rather, this type of chair swivelled, contained moving parts, including bearings, and was constructed using numerous fasteners such as T-nuts and bolts. See Rec. Doc. 13-1 at 2. Attached to the seat cushion base is the Gasser Chair Company manufacturer's label which reads:

> WARNING
> This product must be inspected at least annually to assure continued structural stability. Specific attention should be given to the tightness of bolts and joints, the structural integrity of any welded areas and the replacement of any missing components (i.e.: glides). Alteration of this product by anyone other than an authorized Gasser Chair Company serviceman may void the product warranty, in the interest of customer safety, (sic) if this product is suspected of being defective or structurally unsafe, it must be removed from service immediately.

Rec. Doc. 13-7. Sam's Town admits that it did not follow this warning. See generally, Rec. Doc. 12-1, 19, and 20. Sam's Town did not conduct an annual inspection to assure the chair's continued structural stability by checking the tightness and presence of the essential bolts. Id. Rather, Sam's Town merely instructed its housekeeping and other maintenance staff to visually inspect the chair for problems during the normal movement of the chairs as they were pushed up to the slot machines. Rec. Doc. 12-1 at 1; 12-2 at ¶ 27. However, this limited and cursory visual inspection was made while the casino employee was standing over the chair moving it into its proper position, and did not include an inspection of the structural components located underneath the chair. Furthermore, Sam's Town did not instruct its maintenance staff to check for the presence and tightness of all essential bolts in accordance with the chair warning. It is in light of these extremely limited "inspection" procedures that the Court proceeds in its analysis of the law.

## SUMMARY JUDGMENT

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv.

---

[3]The Court notes that the amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and

Corp., 628 F.3d 725, 728 (5th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id (citations omitted). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir. 1996). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the Court is required

---

advisory committee's note (emphasis added). This Court considers this change to be a distinction without a difference.

to render the judgment prayed for.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S. Ct. 2548, 2556, 91 L. Ed. 2d 265 (1986).  However, before it can find that there are no genuine issues of material fact, the Court must be satisfied that no reasonable trier of fact could have found for the non-moving party. Id.  With these principles in mind, the Court now turns to a review of the claims at issue.

## LAW AND ANALYSIS

Matthews has brought the underlying tort suit under the Louisiana Civil Code article 2317.  Record Document 1-1 at ¶ 6.  Specifically, Matthews seeks damages based on his claim under article 2317.1, which governs damage cause by ruin, vice, or defect in things as follows:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

La. C.C. art. 2317.1.  For the purposes of this motion, Sam's Town concedes that it had ownership and custody (garde) of the chair and the chair contained a defect that caused plaintiff's injuries, *i.e.* one of the three bolts that attached the back bar to the seat sheared and the other two bolts either backed out of the T-nuts or were simply not installed.  Rec. Doc. 12-1 at 7; 13-2 ¶ at 6.  Accordingly, Matthews need only to establish that: (1) Sam's Town had actual or constructive knowledge of the defective chair,[4] and (2) the exercise of

---

[4]Matthews does not contend and has not presented any evidence that Sam's Town had actual knowledge of the chair's defect. Accordingly, there is no factual dispute in the record regarding Sam's Town's actual knowledge.  It is obvious to the Court that Sam's Town did not have actual knowledge of the defect prior to the incident, and the Court will continue its analysis only with respect to whether Sam's Town had constructive knowledge of the

reasonable care would have been prevented Matthews' injury.

### 1. Constructive Knowledge of Defect

The Court must first determine if the competent summary judgment evidence shows that Sam's Town had constructive knowledge of the defect under La. C.C. art. 2317.1, that is, if Sam's Town, in the exercise of reasonable care, knew or should have known about the detached or missing bolts.[5] The duty to exercise reasonable care is defined as the duty to identify that the thing creates a risk of harm to another, if a reasonable person would *recognize such a risk when using the type of attention, perception of the circumstances, memory, intelligence, and judgment proper to a reasonable person.* Myers v. Dronet, 2001-5 (La. App. 3 Cir. 6/22/01), 801 So. 2d 1097, 1108, (emphasis added) (citing Levi v. S.W. Louisiana Elec. Membership Co-op., 542 So. 2d 1081, 1084 (La. 1989). Because the two missing bolts from the chair back constitute a defect and created an unreasonable risk of harm to Matthews, Rec. Doc. 13-2 ¶ at 6, the remaining key issue is whether Sam's Town, in the exercise of reasonable care, should have discovered the defect. On this issue, the evidence is uncontroverted. As will be explained below, the Court finds in light of the undisputed facts, Sam's Town failed to exercised the level of attention, perception of the circumstances, memory, intelligence, and judgment proper to a reasonable person in its

---

missing bolts.

[5] Sam's Town places great weight on its argument that the missing bolts were not *apparent*, as required in Player v. Baker, 42,451 (La. App. 2 Cir. 9/19/07), 965 So. 2d 984, 987 (holding that the defendant has the duty to act reasonably to discover apparent defects in things under his garde). This factor will be analyzed in conjunction with the standard of reasonableness, since reasonable care, by definition, entails discovery of those defects which are apparent.

maintenance of the chair. See Myers v. Dronet, supra. Accordingly, the Court finds that Sam's Town, in the exercise of reasonable care, should have discovered the defect and therefore had constructive knowledge of the defect in the chair that caused the incident and any related damages.

Sam's Town concedes that they did not inspect the structural components underneath the chair prior to returning it back to the gaming floor. Rec. Doc. 13-2 ¶ at 15. See generally, Rec. Doc. 12, 19, and 20. Furthermore, Sam's Town admits it did not implement any preventative maintenance procedures or formal employee inspection policies to ensure the presence and tightness of all essential bolts. Rec. Doc. 21 at 3 citing Dep. of Michael Herzog at pgs. 14-16. Sam's Town failed to maintain any maintenance records on these chairs, and has not presented any evidence showing that Sam's Town performed any substantive inspection with regards to the structural aspects of this chair at any time since April, 2008. This failure to initially inspect the chair upon return from the third party upholsterer in conjunction with the failure to perform any interval maintenance or inspection of the structural components is unreasonable in light of the type of chair and nature of its use. See Crooks v. Sw. Louisiana Hosp. Assoc., 2012-157 (La. App. 3 Cir. 8/8/12), 97 So. 3d 671, 678 writ denied sub nom, Crooks v. S.W. Louisiana Hosp. Ass'n, 2012-1982 (La. 11/21/12), 102 So. 3d 58, (holding that hospital had constructive knowledge of an internal defect in a sofa bed when it failed to perform regular inspections of the bed's support system).

According to the testimony of Sam's Town, the chair at issue was sent to an outside contractor to be re-upholstered sometime prior to April, 2008. This re-upholstering job necessarily required the chair back be removed from the chair base in order to perform the

work. Rec. Doc. 13-2 ¶ at 13. Upon its return to Sam's Town and before it was returned to use by casino patrons, a qualified Sam's Town employee could have conducted an inspection to determine if the critical three bolts were in place. It is also important to note that the employees of Sam's Town should have noticed that the third-party re-upholstering of the chairs was less than ideal, and in, fact, of poor work quality. Rec. Doc. 13-2 at ¶ 14. This fact, in conjunction with Sam's Town knowledge that the chair had to be disassembled during the re-upholstery process is yet another factor further proving that Sam's Town failed to act in a reasonable manner with respect to this chair. A simple hand check could have and should have been done to ensure that all bolts were present, as Sam's Town admits that the bolts could, in fact, be felt under the chair covering.

As discussed in the factual background, this chair swivelled, contained moving parts including bearings, and was constructed using numerous nuts and bolts. Any doubt as to the reasonable standard of care in this instance is easily disposed of upon review of the warning located directly on the subject chair. By virtue of the manufacturer's warning label, Sam's Town was placed on actual notice as to the reasonable and necessary maintenance procedures in order to ensure its safe use. Sam's Town was warned that the chair must be inspected at least annually to assure continued structural stability, paying specific attention to the tightness of bolts and joints, the structural integrity of any welded areas, and the replacement of any missing components (i.e., glides). The manufacturer of this chair clearly put Sam's Town on notice. Sam's Town, *employing the type of attention, perception of the circumstances, memory, intelligence, and judgment proper to a reasonable person*, should have heeded the warning and implemented a policy which periodically mandated the inspection of the structural components of the chair, including

the presence and tightness of all bolts. Sam's Town utterly failed in its duty.

While Sam's Town repeatedly argues that its housekeeping, security, and other staff "inspected" the chairs on a daily basis when they pushed the chairs back into their proper position in front of the gaming machines, this inspection of the chairs is not of the type or nature necessary under the circumstances.  While Sam's Town instructed its staff to remove the chair from the floor if they saw a problem, this brief contact the housekeeping and security staff had with the chair in order to properly position it in front of the gaming machine is not an adequate inspection.  Ultimately, Sam's Town has not presented any evidence that they have performed even one inspection ensuring the existence of all bolts and structural parts since 2008, the time when this chair was returned to service after being re-upholstered.

Sam's Town also argues that because these bolts were covered by a single layer or flap of vinyl upholstery, the defect was not apparent.  However, given the complexity of this chair in light of the specific warning on the back of the chair to check the tightness of all bolts and replacement of the missing components, the Court finds that the absence of two of the three bolts constitutes a defect, and is under these circumstances, is an apparent defect.[6]  These bolts, although covered, could be readily felt with the fingers through the material to confirm their presence.  While such bolts may not have been readily visible to non-maintenance staff, a qualified maintenance professional tasked with inspecting this type of chair on a regular basis and acting in a reasonable manner in

---

[6] Maintenance staff, employing the type of attention, perception of the circumstances, memory, intelligence, and judgment proper to a reasonable person, would have discovered the missing bolts had they simply inspected the structural components of the chair per the manufacturer's warning.

accordance with the warning on the chair back would have easily discovered the absence of these two important bolts. In this instance, a reasonable person would not have completely disregarded the warning to inspect for the presence of all bolts at least annually. Furthermore, given to the poor quality of the re-upholstery job, it is inexcusable that Sam's Town did not initially check the structural integrity of the chair base including verifying the presence of all load bearing bolts prior to placing it on the gaming floor.

## 2. Prevention of Damages

Article 2317.1 requires the Plaintiff to prove that the damage could have been prevented by the exercise of reasonable care. Per Sam's Town's own Motion for Summary Judgment, one of two things occurred with respect to the subject chair. Either the third party that performed the re-upholstering never installed the two bolts at issue or the bolts backed out over time and became detached on their own. Under either scenario, it is abundantly clear that the exercise of reasonable care would have discovered the defect and prevented the damage to Plaintiff.

Assuming the third-party upholsterer never installed the two bolts,[7] an initial inspection of the structural components of the chair upon its return from the upholsterer would have revealed the defect. Furthermore, despite the fact that the chair was placed directly in service without inspection, Sam's Town would have discovered the missing bolts if, just once, in the approximately three years preceding the incident, they had conducted

---

[7] Based on the evidence presented in this case and type of chair at issue, the Court finds this factual scenario far more likely than the alternative theory opined by Sam's Town. The chair bolts were covered by a vinyl upholstering. Had the bolts worked themselves loose over time, they likely would have been trapped by the upholstery after falling out of the T-nut and would have been present at the scene of the accident. Because the second and third bolts were not found, and that area of the chair was covered by upholstery, it is highly probable that the bolts had been missing since the chair was re-upholstered.

a reasonable inspection in accordance with the chair's warning label. Sam's Town not only had an opportunity to inspect the structural integrity of the chair per the warning label after it was returned from the upholsterer, but Sam's Town also missed two annual inspections after placing the chair in service. It is patently obvious that a proper inspection of the chair would have revealed the missing bolts and remedial action would have prevented the chair from breaking.

Alternatively, even if the bolts were present in April 2008, and subsequently detached on their own accord, an inspection compliant with the chair's warning label would have revealed the defect long before the two bolts completely worked themselves free from the chair. In a closed, relatively stationary system, i.e, the chair base covered by a flap of vinyl, bolts do not work loose from the nut and then mysteriously back out and disappear overnight. While it is technically possible that over time, the vibrations can work a bolt loose, Sam's Town has presented no evidence supporting this defense. Two bolts in the same chair becoming detached at the same time is even less likely. However, regardless of the probability of such, the periodic inspection by a qualified maintenance employee checking for the presence and tightness of all essential load bearing bolts would have either revealed that the bolts were loose allowing Sam's Town to take appropriate measures to fix the chair. The failure to annually check this chair per the warning from 2008 forward is patently unreasonable. Per the analysis in Cook, clearly, had Sam's Town performed regular inspection of its furniture, this defect would have been discovered and the damage could have been prevented. [8] See Cook, 97 So. 3d at 679.

---

[8]It should be noted that out of an abundance of caution, this Court has actually conducted far more in depth analysis of the various factors related to the prevention of damages than that found in Cook. Cook, 97 So. 3d at 679. In only three sentences, Cook simply concluded that regular inspections would have discovered the defect, without analyzing

The Court is singularly unimpressed with Sam's Town's argument that Sam's Town would have to inspect ten bolts on each chair on an annual basis (See Rec. Doc. 19 at 4; 20 at 4), considering it is the frequent occupancy of these seats by gamblers that derives substantial revenue for the casino.  The uncontroverted evidence and statements of material fact presented to this Court clearly establishes that reasonable, periodic inspections and tightening of the structural or load bearing bolts underneath this chair would have discovered the missing or loose bolts, preventing damage to Plaintiff.

## CONCLUSION

In light of the type of chair at issue, the warning label located directly on the chair, and the failure to inspect the structural components and/or bolts located underneath the chair base, the Court hereby finds that Sam's Town, in the exercise of reasonable care, should have discovered the defect which caused Matthews's injuries.  Furthermore, had Sam's Town exercised reasonable care in its inspection of the chair, it would have discovered the defect and prevented damage to Matthews.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment  (Rec. Doc. 13) is hereby **GRANTED** insofar as Sam's Town is liable for any damages that arose from the incident at issue.  Accordingly, Sam's Town Motion for Summary Judgment (Rec. Doc.

---

factors such as how the springs actually disappeared or how long they had been missing. Id.  The Court today has analyzed not only the cause of the missing bolts, but also the time period in which such could occur.  It is in light of this analysis in which the Court is confident this holding squarely falls under article 2317.1's requirement that the damage could have been prevented by the exercise of reasonable care.

12) is hereby **DENIED**. An Order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in chambers, Shreveport, Louisiana on this 8th day of May, 2013.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE